THE GAZETTE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9031.    Promulgated April 25, 1927.

1. An amount of $15,000, representing salaries and traveling expenses of subscription solicitors during the years 1884 to 1891, disallowed in invested capital for 1919, 1920, and 1921 for lack of evidence.

2. Certain amounts expended for library and archives and originally charged to expense disallowed in invested capital for lack of proof.

3. The deductions for 1919, 1920, and 1921, for amortization of certain amounts expended for library and archives, originally charged to expense and not determined to be chargeable to capital are disallowed.

4. Section 1207 of the Revenue Act of 1926, relating to the adjustment of invested capital on account of income and profits taxes for prior years, held applicable where books of account are kept on the cash receipts and disbursements basis.

*Arnold L. Guesmer, Esq.,* and *Clifford Yewdall, C. P. A.,* for the petitioner.

*D. D. Shepard, Esq.,* for the respondent.

This is a proceeding for the redetermination of deficiencies in income and profits taxes of $2,519.61, $6,478.04, and $5,499.81 for the years 1919, 1920, and 1921, respectively. The deficiencies result in part from the respondent having (1) refused to permit the petitioner to include in invested capital for each of the years an amount of $15,000 claimed by the petitioner to have been expended during the years 1884 to 1891, inclusive, for building up its circulation structure; (2) refused to permit the petitioner to include in invested capital the amounts of $12,664.71, $11,847.41 and $11,176.80 for 1919, 1920, and 1921, respectively, claimed by the petitioner to have been expended for building up a library and archives, which in newspaper parlance are called the "morgue"; (3) excluded from petitioner's invested capital for each year the prorated income and profits taxes for the preceding year; (4) disallowed deductions of $1,404.50, $1,389.57, and $1,341.63, claimed by the petitioner as amortization of library and archives, and (5) reduced invested capital for each of the years 1919, 1920, and 1921 because of additional taxes found due for

prior years as a result of disallowing as deductions for such years amounts claimed as amortization of library and archives, and excluding from invested capital for prior years the amounts claimed as expenditures made for building up a library and archives and a circulation structure.

### FINDINGS OF FACT.

The petitioner is an Iowa corporation organized in March, 1884; and since that time has been engaged continuously in publishing at Cedar Rapids, Iowa, The Evening Gazette, a daily newspaper. . In the fall of 1885 the circulation was about 700 and as the result of a gradual growth was about 3,000 at the end of 1891. The subscription price was $5 per year both in the city and in the country.

From 1885 to 1891, the petitioner had in its employ two men, and sometimes more, who were engaged in soliciting subscriptions in the surrounding country and near-by towns. Where payments were made in advance these solicitors collected the money. They were paid a salary of $12 per week and their traveling expenses, which included meals, lodging, and livery stable bills. Part of the time one of the men, while soliciting subscriptions, used a horse belonging to the petitioner. To the solicitor who did not use petitioner's horse, petitioner paid $125 per month, which in addition to being his salary of $12 per week was also intended to cover his expenses for meals, lodging, and traveling. Petitioner has no record prior to 1892 relating to expenditures for building its circulation structure or relating to the circulation of the paper.

Petitioner in due course filed its return for the years 1919, 1920, and 1921. In November, 1924, it executed and filed with the respondent "amended" returns wherein the petitioner claimed the allowances which the respondent rejected.

Mats, cuts, and sources of statistical and general information, after being used once were either discarded or filed away. Those which it was thought would be of no further use were discarded. Those which it was believed would be needed in the future were filed or stored away in the archives and library, called the "morgue." Included in the "morgue" were cuts and mats of people prominent in politics, athletics, the moving-picture business and other walks of life. The "morgue" is made use of by the editorial and news departments of the paper. From time to time petitioner eliminated certain material from the "morgue." In 1906 and again in 1925 there was a general cleaning out of the "morgue" by which material of no further use was eliminated. The amount of material from the "morgue" thrown away from 1885 to 1895 was not as great as that thrown away during the last twenty years. During the latter

period, the "morgue" was gone over and cleaned out more thoroughly.

During the hearing the parties to this proceeding submitted a stipulation, a portion of which is as follows:

It is stipulated between the parties in the above-entitled cause that during the years 1893 to 1922, inclusive, the taxpayer corporation maintained no capital accounts on its books showing the cost or costs of so-called "morgue" investments; that all disbursements made on account of the so-called "morgue" investment were charged to operating expense during all of said years and also during the year 1923; that during 1923 the taxpayer corporation had its records analyzed and now seeks to restore to capital as so-called "morgue" investment certain disbursements below mentioned made during said years; that this analysis was made from available records for the years 1893 to 1914, inclusive, by taking from such records certain items of disbursements appearing therein as operating expenses which it, the taxpayer, considered as a capital charge and restored the same to the so-called "morgue" investment; that from 1915 to 1922, inclusive, the taxpayer in its analysis took from its records, particularly the "income and operating account" (a summary for each year) the amount shown in said "operating account" under the heading "Illustrating and Engraving," and restored these amounts to so-called "morgue" investment; that the amounts so selected and restored are set forth on pages 1 and 2 of the taxpayer's Exhibit G–1, attached to its petition filed with the Board, and represents such amounts so taken from the records of the taxpayer corporation and considered by it as representing so-called "morgue" investment, and further considered by it proper capital charges.

The respondent in auditing petitioner's return refused to include in invested capital the amounts claimed by the petitioner to represent the "morgue" investment. The amounts excluded from invested capital for the years 1919, 1920, and 1921, were $12,664.71, $11,847.41, and $11,176.80, respectively.

For the years 1919, 1920, and 1921, the petitioner deducted $1,404.50, $1,389.57, and $1,341.63, respectively, for amortization at the rate of 5 per cent on the balance of the "morgue" investment at the beginning of each year.

Taxes assessed against petitioner, with dates of payment and the amounts of current earnings available for the payment of taxes for the years 1918, 1919, and 1920, were as follows:

| | | Payment. | | Current 1919 earnings available for tax payment. |
| --- | --- | --- | --- | --- |
| | | Date. | Amount. | |
| *Year 1918.* | | | | |
| Tax assessed | $6, 917. 67 | Mar. 13, 1919 | $1, 000. 00 | $5, 942. 13 |
| Interest | 11. 31 | June 15, 1919 | 2, 458. 84 | 3, 241. 67 |
| | | July 29, 1919 | 11. 31 | |
| | | Sept. 15, 1919 | 1, 728. 42 | 2, 332. 46 |
| | | Dec. 15, 1919 | 1, 730. 41 | 1, 009. 01 |
| Total | 6, 928. 98 | | 6, 928. 98 | |

| | Payment. | | Current earnings available for tax payment. |
|---|---|---|---|
| | Date. | Amount. | |
| **Year 1919.** Tax assessed _____ $7,580.42 | Mar. 15, 1920 | $1,895.10 | *1920.* 8,483.79 |
| | June 12, 1920 | 1,895.10 | 3,162.39 |
| | Sept. 15, 1920 | 1,895.10 | 7,102.27 |
| | Dec. 15, 1920 | 1,895.10 | 6,645.67 |
| | Feb. 5, 1920 | .02 | |
| Total _____ 7,580.42 | | 7,580.42 | |
| **Year 1920.** Tax assessed _____ 13,421.68 | Mar. 15, 1921 | 3,355.42 | *1921.* 8,341.71 |
| | June 15, 1921 | 3,355.42 | 5,325.53 |
| | Sept. 15, 1921 | 3,355.42 | 3,442.06 |
| | Dec. 14, 1921 | 3,355.42 | 7,795.13 |
| Total _____ 13,421.68 | | 13,421.68 | |

The respondent reduced petitioner's invested capital for 1919, 1920, and 1921, by $7,741.19, $4,283.66, and $8,409.62, respectively, representing petitioner's prorated income and profits taxes for the respective year preceding. During the years from 1916 to 1921, inclusive, petitioner's books of account were kept on the cash receipts and disbursements basis and the returns filed by it for 1917 to 1921, inclusive, were also on that basis. Income and profits taxes for 1917, 1918, 1919, 1920, and 1921, were not accrued on the books.

## OPINION.

TRAMMELL: The petitioner contends that it is entitled to include in its invested capital for each of the years for which deficiencies have been proposed, an amount of $15,000 which it claims to have spent during the years 1884 to 1891, inclusive, in building up its circulation structure. Prior to 1892, the petitioner has no records relating to expenditures for building the circulation structure, or relating to circulation. The evidence offered was the testimony of an employee who came to the company in 1885 and from that year until 1901, was in charge of the composing room. This employee was not an officer of the company during that time, nor did he keep its accounts. The knowledge he had as to expenditures and circulation was gained from discussion with the officers and other employees of the company and from his observations around the plant.

In support of its contention the petitioner submitted evidence showing that it regularly employed two subscription solicitors, and sometimes more, during the years 1885 to 1891; that their salaries were $12 per week and that they were granted additional allowances for meals, lodging, livery stable bills, and other traveling expenses, sufficient to make the total amount $125 per month per man when not

using the horse and vehicle belonging to the company. There is no evidence as to how many more, if any, than two solicitors were employed, the time for which they were employed or the salaries and expenses paid them. We do not know whether the number of additional solicitors were few or many, whether they were employed only for a few days or for several months, or whether they were allowed more salary and expense money or less than was allowed the two regular solicitors. The evidence relates to the two solicitors regularly employed and we are asked to find from the evidence that petitioner spent $15,000 from 1885 to 1891, inclusive, in building up its circulation structure. In order to make such a finding we would have to hold that only a small part (approximately one-sixth) of the total salaries and expenses of the two subscription solicitors was to be considered as an ordinary and necessary expense and that the remainder should be treated as capital expenditures. In our opinion the facts in this case do not warrant such a holding. We can not make such a finding in the absence of evidence as to what part of the expenditures represented expenses and what part capital expenditures. The action of the respondent in refusing to allow $15,000 to be included in invested capital on account of such expenditures is, therefore, approved. *Appeal of Carter Medicine Co.*, 3 B. T. A. 212.

The petitioner contends that there should be included in its invested capital certain amounts which represent expenditures made in building up its library and archives or " morgue."

During the years 1893 to 1923, we find that the petitioner kept no capital accounts on its books showing the cost of the " morgue " investment but that all disbursements made on account of the " morgue " investment were charged to operating expense. In 1923, petitioner had its records analyzed and thereafter sought to include in its invested capital as the " morgue " investment certain disbursements made during the years 1893 to 1923 which its accountant considered to be capital expenditures. The accountant was not an employee of the petitioner during that period and had no personal knowledge as to what the expenditures were for or what portion thereof represented assets having a life in excess of a year, or what was for current expenses.

Since no competent testimony was offered in support of the petitioner's contention, we have no way of knowing whether the amounts were capital expenditures or whether they were properly chargeable to expense, as was originally done by the petitioner. The respondent's action, therefore, is approved.

It was also contended by the petitioner that it should be allowed a deduction each year representing amortization on its " morgue "

investment. Since it has failed to establish that it is entitled to capitalize the amounts claimed as "morgue" investment, it therefore is not entitled to a deduction for amortization thereof.

The two remaining issues relate to the respondent's action in reducing petitioner's invested capital for the years 1919, 1920, and 1921, by the prorated amount of income and profits taxes for the years 1918, 1919, and 1920, respectively, and also by the amounts of additional taxes found due for certain years prior to 1918. The petitioner contends that article 845, Regulations 45 and 62, and section 1207 of the Revenue Act of 1926, which have to do with the adjustment of invested capital on account of prior-year taxes, do not apply to it inasmuch as it keeps its books and files its returns on the cash receipts and disbursements basis. The petitioner also contends that since it was on the cash basis and had, on the date it made payment of its tax for the preceding year, current earnings in excess of such payments, the reduction of its invested capital on account of taxes for prior years is unwarranted. The petitioner makes no complaint, however, that the adjustment of its invested capital as made by the respondent is not in accordance with article 845 of Regulations 45 and 62.

Article 845 of Regulations 45 and 62 is as follows:

For the purpose of computing invested capital federal income and war profits and excess profits taxes are deemed to have been paid out of the net income of the taxable year for which they are levied. It is immaterial, therefore, whether reserves for the payment of such taxes for the preceding year have been set up or not, or if set up whether such taxes when paid have actually been charged against such reserves. Amounts payable on account of such taxes for the preceding year may be included in the computation of invested capital only until such taxes become due and payable. A deduction from the invested capital as of the beginning of the taxable year must therefore be made for such taxes or any installments thereof, averaged for the proportionate part of the taxable year after the date when the tax or the installment is due and payable. Where as a result of an audit by the Commissioner, or the acceptance of an amended return, or for any other reason, the amount of any such tax for the preceding year is subsequently changed, a corresponding adjustment will be made in the invested capital for the taxable year upon the same basis as if the corrected amount of the tax for the preceding year had been used in the original computation of the invested capital for the taxable year.

Section 1207 of the Revenue Act of 1926 provides as follows:

The computation of invested capital for any taxable year under the Revenue Act of 1917, the Revenue Act of 1918, and the Revenue Act of 1921, shall be considered as having been correctly made, so far as relating to the inclusion in invested capital for such year of income, war-profits, or excess-profits taxes for the preceding year, if made in accordance with the regulations in force in respect of such taxable year applicable to the relationship between invested capital of one year and taxes for the preceding year.

The above section of the statute validated the regulations of the Treasury Department above quoted and gave that article the force and effect of law.

From a careful consideration of the article in connection with the section of the Act quoted, we see nothing that would justify petitioner's contention that it does not apply to cases where the books are kept and the returns filed on a cash receipts and disbursements basis but is applicable only where the accrual method of accounting is employed. The language of article 845 does not differentiate in any way between the two methods of accounting. In fact to our minds it is sufficiently comprehensive and specific to include those cases where the cash receipts and disbursements method of accounting is employed as well as those employing the accrual method.

If any doubt remained in our minds that Congress intended section 1207 of the Revenue Act of 1926 and article 845 of the Regulations 45 and 62 to apply only to those cases where the accrual method of accounting is employed, it would be removed by the legislative history of section 1207. This section was added by the Senate as an amendment to the bill as originally reported from the House. The amendment as added by the Senate reads as follows:

> The computation of invested capital for any taxable year under the Revenue Act of 1917, the Revenue Act of 1918, and the Revenue Act of 1921, *in the case of a taxpayer whose books of account were kept on the accrual basis,* shall be considered as having been correctly made, so far as relating to the inclusion in invested capital for such year of income, war-profits, or excess-profits taxes for the preceding year, if made in accordance with the regulations in force in respect of such taxable year applicable to the relationship between invested capital of one year and taxes for the preceding year.

The following was eliminated from the section in conference:

> In the case of a taxpayer whose books of account were kept on the accrual basis.

The bill, as finally passed by both the House and the Senate, contained section 1207 as reported from conference. Since Congress eliminated from the section that portion of it which might warrant the application contended for by the petitioner, we find no error in the action taken by the respondent. *Appeal of Russel Wheel & Foundry Co.,* 3 B. T. A. 1168; *Appeal of B. F. Boyer Co.,* 4 B. T. A. 180; *Appeal of Randall Brothers, Inc.,* 4 B. T. A. 291; *Appeal of Hutchins Lumber & Storage Co.,* 4 B. T. A. 705; *Appeal of Manville Jenckes Co.,* 4 B. T. A. 765.

*Judgment will be entered on 10 days' notice, under Rule 50.*